## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Charles R. Irvin, being duly sworn on oath, depose and state that I have been employed as a special agent (SA), with the Federal Bureau of Investigation since March 5, 2017, and I am currently assigned to the Memphis Division of the Federal Bureau of Investigation.

## AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since March 5, 2017. Prior to working for the FBI, I was a police officer for the Richmond, Indiana Police Department (RIPD) from April 2012 until February 2017. During my time with the RIPD, I attended a training on Gangs, Drugs and Gang Violence. Prior to joining the RIPD, I was a patrol officer with the Evansville, Indiana Police Department for approximately 5.5 years. Prior to that, I was patrol officer with the Chandler, Indiana Police Department for 1 year. I began my law enforcement career as a part-time patrol officer for the Indiana University Police Department. Upon hiring, I completed the Indiana University Law Enforcement Academy, which is 16 weeks and is an accredited law enforcement academy recognized by the state of Indiana.

2. During my career, I have participated in numerous violent crime investigations. During these investigations, I have conducted and/or participated in the following: physical surveillance, victim and suspect interviews, the execution of search warrants, debriefing and tasking of informants, and reviews of surveillance videos. In addition, through my training, education, experience, I have become familiar with the manner in which bank robberies, business robberies and other violent crimes are typically conducted.

3. I am an investigative or law enforcement officer of the United States within meaning of section 2510(7) Title 18, United States Code, and am empowered by law to conduct investigations and make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 1201(a)(1) (Interstate Kidnapping), and Title 18 U.S.C. § 875(a) (transmitting communications in interstate commerce containing request for ransom for the release of a kidnapped person).

## STATEMENT OF PROBABLE CAUSE

4. The United States, including the FBI, is conducting a criminal investigation of Brian Summerson, for violations of Title 18 U.S.C. § 1201.

5. On January 28, 2020, Victoria Floyd contacted the Federal Bureau of Investigation, Memphis Field Division, in reference to information to an alleged kidnapping of Victoria's daughter, Skyla Floyd. According to Victoria, Skyla had left Memphis, Tennessee approximately two months prior with a Mario Webb, to live in Savannah, Georgia.

6. On January 28, 2020, at approximately 0030 hours, Victoria received a video call via from Skyla. Skyla advised that she had been kidnapped by an unknown male (Subject). Skyla told Victoria she had been assaulted by the subject. Victoria observed physical injuries to the face of Skyla. Skyla further stated that Webb owed money to the subject, and that subject knew she and Webb had a relationship. Due to the relationship, the subject was demanding money from Victoria to release Skyla. If the subject did not receive the money, he would kill Skyla.

7. At approximately 0230 hours, a Facebook account titled Mario Webb called Victoria, demanding $2,000 US dollars be deposited onto Cash App $leemoney123456 as ransom payment.

8. Victoria was moved into a conference room at the FBI-Memphis and interviewed by agents. While being interviewed, Victoria received another call from the Facebook Account titled Mario Webb. The conversation continued in which the subject was demanding money for the release of Skyla.

9. While Victoria was at the Federal Bureau of Investigation in Memphis, she received several Facebook Messenger phone calls from the Mario Webb Facebook Page. The phone calls were recorded via audio. During the series of communications between the subject and Victoria, the subject made known that subject had physical custody of Skyla, and subject would not let Skyla leave until Victoria paid a sum of money to subject via "Cash App" with the account "$leemoney123456."

10. Subject informed Victoria that Skyla was being held to ensure that Skyla's boyfriend, Mario [Mario Webb], repaid the $5,000 Mario owed to subject's boss. Subject's boss was looking for Mario for the past two years and finally found Mario. Subject stated that subject was going to find associates of Mario and eventually "kin" of Mario to hold captive until Mario paid the money to teach Mario a lesson.

11. Facebook was contacted to request subscriber information of the Mario Webb Facebook account. The subscriber information return showed the account had a listed phone number of 901-652-2079. The listed phone number was identified as Skyla Floyd's phone number. T-Mobile was contacted in reference to 901-652-2079 and was advised the cell phone was turned off so location could not be determined.

12. Subject informed Victoria that once the money was received, subject would drop Skyla off at the bus station.

13. Victoria attempted to acquire the ransom money but was unsuccessful in acquiring $1,000. Victoria previously told subject she had the money. Victoria sent $100 to subject 's Cash App account. When subject found out that Victoria did not have the money, subject stated, "You lied to me three times. If you lie again, there will be consequences," and "please do not lie to me again." Victoria

asked subject something to the effect of, "how much more money do I need to send for you to let my daughter out of your truck?" subject replied, "$900. If you lie to me again, it goes up to $2,000."

14. Victoria previously saw a video image of Skyla, in which it appeared Skyla had bleeding, swelling, and bruising in the facial area from being struck. Victoria made a statement to the effect of, "I'll get you the money, just please don't hit my daughter again." Subject made a comment to the effect of, "that was just a love tap."

15. Subject sent a text via the Facebook messenger app to Victoria to the effect of, "Oh my God. You lied and played me three times; I'm done talking." Then subject sent a message a short time later to the effect of "I gave you enough time. Times up."

16. Subject gave a deadline of 7:19 p.m. CST for Victoria to come up with the money and instructed Victoria not to call unless Victoria had the money to send to subject. If Victoria could not come up with the money, subject would turn Skyla over to other individuals to whom Mario owed the money. No further contact was made with the subject or Skyla.

17. Cash App was contacted to obtain the subscriber information for $leemoney123456. Cash App advised that phone number 910-359-2720 was linked to the account. Further review of phone number 910-359-2720 revealed that it was a Google Voice Number. Further information from Cash App revealed the following subscriber information: phone number 843-901-7870, email brian.summerson@gmail.com, date of birth 1-19-1995 and address 1408 Sandbar Ct Dillon, SC 29536. Investigators have determined that these identifiers belong to Brian Summerson.

18. Google was contacted in reference to phone number 910-359-2720. Google subscriber information revealed a phone number 843-472-1712 with the name of Tyvon Lee. Investigators have determined that Tyvon Lee is the middle name of Brian Summerson.

19. AT&T was contacted and pings were conducted on telephone number 843-472-1712. AT&T pings advised the phone was located in Florence, South Carolina.

20. Mario Webb was interviewed by Federal Bureau of Investigation Agents in Savannah, Georgia. Webb provided information that Skyla had been picked up in a black semi-truck with a white trailer the night she was kidnapped.

21. Open source searches of Summerson revealed a photograph of a black semi-truck with the logo Summerson Transport, Dillon, South Carolina on the door, and US DOT 3091875 on the side of the cab. Contact was made with Task Force Officer Michael Bolton of the Tennessee Highway Patrol. Officer Bolton advised that US DOT number 3091875 had an inspection report from the Maryland Motor Carrier Safety Program, and the listed driver of the truck was Brian T Summerson 01-19-1995. The semi was registered in New Jersey with tag number AW221H.

22. Contact was made with authorities in Florence, South Carolina, to be on the look out for the black semi with plate number AW221H. Florence County contacted agents in Memphis advising they had found the semi in a business parking lot. The semi was running with curtains blocking the windows, so they were unable to see inside. It was requested the Sheriff's Office contact the occupants to check the welfare of the occupants. Sheriff's Deputies made contact with the driver, identified as Brian Summerson, and asked if he would step out of the vehicle. Summerson stepped out to speak with deputies, at which time a female screamed from inside the semi that she had been kidnapped.

23. After a scuffle with Sheriff's Deputies, Brian Summerson was taken into custody. The female was identified as Skyla Floyd. Skyla had injuries to her face and was transported to the hospital for evaluation.

24. Following the arrest of Brian Summerson, FBI Agents in Florence, South Carolina, obtained consent to search of Brian Summerson's semi-truck, trailer. A consent to search Brian Summerson's cell phones and computer was also obtained.

25. Examination of one of Summerson's cellular phones was conducted. Investigators determined that both 843-901-7870 and 843-472-1712 were the number of this phone at different times.

26. Also during this phone examination, a conversation was located between Summerson and phone number 779-777-5991. This phone number is listed as "Pedro" in Summerson's contacts.

27. On January 28, 2020, at the time Skyla would have been with Summerson, the conversation between Summerson and "Pedro" goes as follows:

   a. Pedro (2:54 am): Get out of the area

   b. Pedro (2:54 am): She gotCash app card

   c. Pedro (2:54 am): Dude she got a Cash App card

28. There is other conversation that follows then Summerson begins to respond:

   a. Summerson (3:16 am): Needs cashapp

   b. Summerson (3:16 am): ASAP

   c. Summerson (3:17 am): Hurry up she at the bank now

   d. Pedro (3:17 am): This not Malibu Most watned

   e. Summerson (3:18 am): Bro can you help me out or not?

   f. Pedro (3:18 am): U gotta use someone not tied to ()

   g. Pedro (3:20 am): Cuz s*** *y n*** Du**%

   h. Summerson (3:20 am): Bro I need help now not story telling time

   i. Summerson (3:21 am): Frfr

   j. Pedro (3:21 am): Don't put me on speaker

   k. Pedro (3:22 am): Turn your location off

  l. Summerson (12:22 pm): (Sends a picture of money. The picture of money was one that Victoria Floyd had sent to Summerson. Summerson then sent the picture to Pedro.)

  m. Pedro (6:02 pm): Sorry I can't talk right now.

  n. Pedro (6:04 pm): My phone to low.

29. Further analysis of Summerson's cellular phone reveled the possibility of other victims. One identified victim was a Shaniece Purvey. Purvey was interviewed via telephone and advised she lived in Parkville, Maryland.

30. Purvey met a male subject (Summerson), with whom she had exchanged text messages. Purvey and Summerson exchanged oral sex and once completed, Purvey went to get dressed, at which point Summerson began punching and attempting to choke her. Purvey was able to escape from Summerson. Summerson fled the area. Purvey did not file a police report or go to the hospital. She advised that she was afraid to file a police report due to her meeting Summerson to exchange sex acts.

31. Another victim identified through cellular phone analysis was Capri Seright. Seright lived in Jersey City, New Jersey and met a male subject through a website called "Skip the games."

32. Seright met the male subject, described as a black male, 6 feet tall, heavy set with a tattoo on his right arm. Seright further stated the male was driving a black semi-truck with gold emblems. Seright had consensual sex in the bed of the semi-truck at the end of the date. When Seright wanted to leave, the male choked her, hit her and tied her up. The male used yellow/brown straps to tie Seright down. The male then went through her phone and attempted to text/call her friend for money regarding Seright's son.

33. The male drove south on I-95 and crossed state lines with Seright still in the vehicle. Seright believed she was held captive for 3 days. Seright remembers the dates because her birthday was within the dates.

34. The final day, Seright was able to grab her phone and sneak out of the truck while Summerson was asleep. Seright ran for help and the police were called.

35. Through an offline search of NCIC, it was determined that Seright had spoken with the Johnston County Sheriff's Office. FBI in North Carolina made contact with Johnston County Sheriff's Office and obtained a police report filed by Capri Seright. The report was filed on January 11, 2020. January 11th is Seright's birthday.

36. Police arrived and spoke with Seright. Seright explained that she had been kidnapped from Jersey City after having consensual sex. Seright was able to escape from the truck in Johnston County.

37. Police identified the male truck driver as Brian Summerson. Summerson was interviewed by the officers. Summerson told officers that he was approached by Seright at a truck stop in New Jersey. The female told Summerson she wanted to go as far south as possible. Summerson agreed to take her to Georgia. Summerson denied ever having sex with Seright.

38. Affiant further reviewed Summerson's cell phone conversations, paying particular attention to the three days in which Seright stated she was kidnapped. A conversation between Summerson and "Pedro" was located beginning January 10, 2020 at 12:17 am until police were called in Johnston County on January 11, 2020. The conversation is as follows:

   a. Pedro (12:17 am): Who I need to be
   b. Summerson (12:26 am): Pedro
   c. Pedro (12:27 am): Too
   d. Pedro (12:27 am): Glad
   e. Summerson (12:27 am): He so called nigga
   f. Summerson (3:54 am): Scare him again lol
   g. Summerson (3:54 am): Drug deal went bad

h. Summerson (4:01 am): Lol

i. Summerson (4:01 am): He scared

j. Pedro (4:08 am): She might be sending her location

k. Pedro (4:08 am): That phone could be tapped

l. Summerson (8:49 am): Should I keep her and make her work for me

m. Summerson (8:49 am): Or dump her out on the highway

n. Summerson (8:49 am): On an exit ramp away from everyone

o. Summerson (8:52 am): Any suggestions bitch has ntn foster home age9-21

p. Pedro (8:52 am): She not gonna work for u would have to test her with someone you know

q. Summerson (8:52 am): She 24 now

r. Summeron (8:53 am): One baby left behind a son like 1/2yrs old

s. Pedro (8:53 am): But act like he a trick

t. Pedro (8:54 am): Say I got you a date make earl proud

u. Summerson (8:54): Lol

v. Pedro (8:58 am): Remember nights n days time date can't know or locations

w. Summerson (9:01 am): So keep her with me going to Miami right?

x. Pedro (9:05 am): That's up to you judgement

y. Summerson (9:05 am): You know me

z. Summerson (9:15 am): Make a fake cash app for me

aa. Summerson (9:52 am): 551-200-4560

bb. Summerson (9:53 am): Call making threats that you have her child then and tell her she better get with the fucking program

cc. Summerson (9:53): Hurry while we stopped

dd. Pedro (12:46 pm): Bro dude don't have access to her kid

ee. Summerson (12:49 pm): Text that number and tell her

ff. Summerson (12:50 pm): Trust me

gg. Summerson (2:46 pm): (Summerson texts a picture of Seright's driver license)

hh. (Some text conversation in reference to Pedro nearly being in a wreck)

ii. Summerson (4:34 am on January 11, 2020): Going to jail I'll post bond in morning and explain.

## **CONCLUSION**

Based on my investigation, I believe that there is probable cause to believe that violated the crimes as set forth in this criminal complaint and respectfully request that the Court issue an arrest warrant.

Respectfully Submitted,

_____
Charles R. Irvin
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on the __15th__ day of January, 2021.

    s/Tu M. Pham
HONORABLE TU M. PHAM
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF TENNESSEE