# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:21-cr-20005-JTF-1 |
| ) | |
| BRIAN SUMMERSON, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DENIAL OF DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

Before the Court is Defendant Brian Summerson's Motion to Withdraw Guilty Plea, filed on September 9, 2025. (ECF No. 178.) The Government responded on September 19, 2025, to which the Summerson replied on October 22, 2025. (ECF Nos. 181, 188.) On October 23, 2025, the Court held a hearing on Summerson's Motion. (*See* ECF No. 189.) At the conclusion of the hearing, the Court denied the Motion and stated that a written Order would follow. The Court then proceeded with Summerson's sentencing hearing. (*See id.*) As noted at the conclusion of the motion hearing, Summerson's Motion to Withdraw Guilty Plea is **DENIED**.

**I.  BACKGROUND**

On March 25, 2021, Defendant Brian Summerson was initially indicted by a grand jury sitting in the Western District of Tennessee. (ECF Nos. 12–13.) On June 16, 2022, the grand jury returned a six count Superseding Indictment, which charged Summerson with: (1) kidnapping, in violation of 18 U.S.C. §§ 2 and 1201(a)(1); (2) extortion, in violation of 18 U.S.C. §§ 2 and 875(a); (3) conspiracy to commit kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and 1201(c); and (4) conspiracy to commit extortion, in violation of 18 U.S.C. §§ 371 and 875(a). (ECF No. 73.) This

Indictment alleges that Summerson, an over the road truck driver, conspired to and did in fact engage in a scheme to hold women against their will, physically assault them, transport them across state lines, coerce them into working as prostitutes for his co-conspirator and extort ransom money for the return of the victims. (*See id.*)

Through counsel, Summerson informed the Court that it was his desire to enter into a plea agreement with the Government. On May 7, 2025, pursuant to a written Plea Agreement, the Court held a Change of Plea Hearing and ultimately accepted Summerson's plea of guilty to extortion, as charged in Count Two of the Superseding Indictment. (*See* ECF Nos. 173, 175.) Under the Plea Agreement, Summerson agreed waive most of his appeal rights in exchange for the Government's agreement to recommend that he receive full credit for acceptance of responsibility and to dismiss Counts 1, 3, and 4 at the conclusion of the sentencing hearing. (*See* ECF No. 175.)

On September 9, 2025, Summerson filed a motion to withdraw guilty plea—126 days after pleading guilty and 17 days before he was scheduled to be sentenced. (ECF Nos. 173–74, 178.) The Government responded in opposition, and Summerson replied. (ECF Nos. 181, 188.) On October 23, 2025, the Court held a hearing on Summerson's motion. (ECF No. 189.) The discovery material that was alleged to be tendered to Summerson after his change of plea was introduced into evidence at the hearing. It included: (1) an extraction report for an Apple iPhone dated May 8, 2025, containing a log of three SMS text messages; and (2) an extraction report for a Motorola cellphone dated May 7, 2025, containing logs of 55 calls and 154 SMS text messages. *See* Hr'g Ex. 1–2. The extracted logs and text messages were exchanged between one of the victims, S.F., and her boyfriend, M.W., from January 25–28, 2020. *See id.*

**II.     LAW**

To withdraw a guilty plea before sentencing, a defendant "must show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The purpose of Rule 11(d) is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (internal quotation marks and citation omitted).

The Sixth Circuit has developed a multi-factor balancing test to assess whether to grant a motion to withdraw a guilty plea. Those factors include:

(1) the amount of time that elapsed between the plea and the motion to withdraw it;
(2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;
(3) whether the defendant has asserted or maintained his innocence;
(4) the circumstances underlying the entry of the guilty plea;
(5) the defendant's nature and background;
(6) the degree to which the defendant has had prior experience with the criminal justice system; and
(7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). In the analysis, "[n]o one factor controls; the list is general and nonexclusive." *Id.* (citation omitted). Each factor's relevance will depend upon the "circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *Id.* (quoting *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)).

**III.    ANALYSIS**

The Court now considers the parties' written briefing, and the evidence and arguments presented at the motion hearing on October 23, 2025, in conjunction with the *Bashara* factors, as follows:

3

### 1. Amount of Time

The Government recounts the factual record, noting that Summerson filed his motion to withdraw more than four months after his plea, more than three months after he received the discovery information on which he bases his motion, three weeks after he received the draft Presentence Investigation Report ("PSR"), and just 16 days before the sentencing hearing was scheduled to occur. [1] (ECF No. 181.) The Government argues that Summerson's delay weighs against withdrawal, noting the Sixth Circuit has "considered delays of between one and two months as counseling against permitting withdrawal." *United States v. Lee*, No. 23-5584, 2024 WL 991870, at *3 (6th Cir. Mar. 7, 2024), *cert. denied*, 145 S. Ct. 231 (2024).

Summerson argues that the relevant period of time is the three weeks that passed between his receipt of the draft PSR and the filing of his motion to withdraw. (ECF No. 188 at 6.) He contends that "at the time of his plea, Summerson was unaware that the Government had and/or would use this exculpatory information against him at the time of sentencing," and that "he had not understood the import of his plea and whether the Government or Probation would seek to argue that Section 875(a) would necessarily mean kidnapping was established by the simple fact he had entered a plea under that section." (*Id.*)

The amount of time weighs against withdrawal. *Bashara* looks to the time between the plea and the withdrawal motion. In this case, Summerson's four-month delay weighs against withdraw of his plea of guilty. His arguments about failure to understand the import of his § 875(a) plea, his time in solitary confinement, and the draft PSR motivating the motion to withdraw do not change or reduce the relevant amount of time under this factor from four months to three weeks. Also, Summerson does not explain why he waited more than three months after he received the discovery

---

[1] The Final Pre-Sentence Report was filed September 17, 2025. (ECF No. 180.)

information on which he bases his motion to actually file the motion to withdraw. Those arguments are properly considered under the other *Bashara* factors, such as validity of the reason for delay or the underlying circumstances.

### 2. Valid Reason for Delay

One justification offered by Summerson for the delay is that he spent about a month in solitary confinement between his plea and his withdrawal motion. (ECF No. 188 at 6–7.) Summerson testified at the hearing that he was held in solitary confinement from July 1 to August 4, which prevented him from accessing his legal papers.[2] However, it appears to the Court that the real impetus for filing the motion to withdraw was Summerson's receipt of the draft PSR filed by the Probation Office on August 19, 2025. (*See* ECF Nos. 176; 188 at 6–7.) According to Summerson, it was only when the draft PSR applied the kidnapping cross-reference that the post-plea discovery production became material. *See* USSG §§ 2A4.1–4.2. (*See* ECF No. 188 at 6–7.)

Summerson's argument is unpersuasive when viewed in the context of the entire discovery and guilty plea processes. The Record shows that Summerson received additional text messages after his guilty plea to extortion. But the general content of those messages (that the victim and her boyfriend were arguing in the weeks leading up to the offense conduct) was already known to Summerson before he entered his guilty plea. (*See* ECF No. 181 at 6–8.) Summerson's argument that he was surprised when the Probation Office, and ultimately the Government, would seek to apply the kidnapping cross-reference appears to be disingenuous. The plea agreement itself expressly contemplates a challenge by Summerson to any application of a sentencing enhancement

---

[2] During Summerson's testimony, he stated that he was placed in solitary confinement from July 1st through August 4th. In the context of direct examination, it appears that he was in solitary during those weeks in 2025. However, on cross-examination, Summerson testified that he was actually in solitary during the summer of 2024. Summerson may have erred on the year. Summerson's confinement is only relevant if it occurred in 2025; and for this analysis, the Court will assume so. The Court also notes that Summerson's lawyer was able to visit Summerson during that time.

for kidnapping. (*See* ECF No. 175.) In addition, the Court is unable to locate any reference to the text messages produced post-plea in the draft PSR. (*See* ECF Nos. 175–176.)

Summerson does not provide a valid reason for waiting months to file his motion. *See United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (affirming withdrawal denial after defendant waited 36 days and the true motivation appeared to be "getting a better deal" or going to trial after changed circumstances). This factor weighs against withdrawal

### 3.    Innocence

As noted, Summerson pleaded guilty to one count of extorsion. (ECF No. 173.) He does not claim that he is innocent of that crime. (*See* ECF No. 188.) Instead, he disputes the applicability of the kidnapping cross reference enhancement.  Summerson argued that in pleading guilty to the § 875(a) subsection of extorsion, he unknowingly and unintentionally admitted his guilt to kidnapping. To further support this, Summerson disputed certain important portions of the Government's factual basis during his motion hearing testimony, such as the fact that he met the victim for purposes of prostitution.

But as the Government pointed out, the act prohibited by § 875(a) requires only a *communication* "containing any demand or request for a ransom or reward for the release of any kidnapped person." Even a defendant who in fact held no hostage can be guilty under § 875 so long as the defendant conveyed an interstate communication with the specific intent to extort. *See United States v. Cooper*, 523 F.2d 8, 10 (6th Cir. 1975) (analyzing an extortion threat charged as a violation of § 875(b)); *United States v. Brika*, 487 F.3d 450, 465 n. 8 (6th Cir. 2007) (finding no error in district court analogizing *Cooper* to a violation of § 875(a)).

This factor weighs against Summerson. *See United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987). He has not argued that he is innocent of extortion. *See United States v. Baez*, 87

6

F.3d 805, 809 (6th Cir. 1996). It would be difficult for Summerson to make such an argument because he admitted the accuracy of the factual basis for extortion as set forth by the Government at the change of plea hearing. He acknowledged making "a bad choice," and said that he was "deeply sorry" for his role "in the extortion." (*See* ECF Nos. 173; 180 at 16.) That Summerson contests a Sentencing Guidelines cross-reference does not weigh in favor of plea withdrawal. It only identifies an issue to be addressed at his sentencing hearing.

### 4. Underlying Circumstances

A court's acceptance of a guilty plea is conditioned on a determination that a defendant has waived their rights and admitted their guilt "knowingly and voluntarily." *See United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001). Here, Summerson argues that his plea was not knowing and voluntary because the Government withheld material exculpatory and impeachment evidence until after his guilty plea, and that the Government's failure to disclose this evidence before the plea violated *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.[3] (ECF No. 188 at 3–5, 8–9.)

Even when a defendant can show a *Brady* violation, the "failure to disclose exculpatory evidence before a plea deal does not 'render the guilty plea involuntary or unintelligent' when the district court has established a factual basis for the plea." *White v. United States*, 2025 U.S. App. LEXIS 19487, *3 (quoting *Campbell v. Marshall*, 769 F.2d 314, 315 (6th Cir. 1985)). For a *Brady* violation to provide a basis to withdraw a guilty plea, a defendant must also establish a "'reasonable probability' that he wouldn't have pled guilty had the prosecutors turned over" the

---

[3] "To establish a *Brady* violation, a movant must show that the prosecution withheld favorable evidence that was material to his conviction or sentence. *Jones v. Bagley*, 696 F.3d 475, 486 (6th Cir. 2012). This requires there be a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *White v. United States*, 2025 U.S. App. LEXIS 19487, *2 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

7

material evidence. *Id.* at *4. And where the evidence at issue is not *Brady* material, but instead impeachment evidence, the Constitution does not require disclosure before a guilty plea. *See United States v. Ruiz*, 536 U.S. 622, 633 (2002).

The primary concern is "ensuring that criminal defendants receive a 'fundamentally fair' trial." *Moldowan v. City of Warren*, 578 F.3d 351, 378 (6th Cir. 2009) (quoting *United States v. Bagley*, 473 U.S. 667, 675 (1985)). Ultimately, when a defendant voluntarily enters a guilty plea, and the district court properly assures itself of the defendant's guilt, "there is no concern that [the defendant] didn't receive a 'fundamentally fair' trial." *White*, 2025 U.S. App. LEXIS 19487 at *4.

At his change of plea hearing, the Court explained to Summerson how the proceeding would progress. Thereafter, as Summerson listened, the Government read the plea agreement into the Record and provided a factual basis for the underlying crime of conviction. Summerson was then placed under oath. After being satisfied that Summerson was of clear mind, the Court engaged in a thorough plea colloquy with him. Summerson confirmed that he had read the indictment and plea agreement, that he had discussed them thoroughly and in detail with his lawyer, and that he understood the charges and terms of the plea agreement. Summerson then admitted his guilt and accepted responsibility for the facts stated on the record by the Government. After confirming that Summerson understood all of the guilty plea procedures and rights he was giving up, the Court answered his questions and ensured that he entered the plea knowingly and voluntarily. The Court then accepted Summerson's plea of guilty to Court 2 of the First Superseding Indictment.

Summerson now seeks to withdraw that plea on the basis of discovery information received from the Government after the change of plea hearing. (*See* ECF No. 178.) He contends that the new information is material and exculpatory and the lack of disclosure means his plea was not "knowing and voluntary." Summerson argues that had he received this discovery information

8

before his guilty plea, he would either have requested his counsel negotiate a different plea agreement or would not have entered a plea of guilty. (*See id.*)

The discovery materials at issue are extraction reports produced after the change of plea hearing that contain logs of 55 calls and 157 SMS text messages. (*See* ECF No. 181-1.) The extracted calls and text messages document exchanges between victim S.F. and her boyfriend, M.W., from January 25–28, 2020. (*See id.*) The messages show that the victim and her boyfriend were arguing in the weeks leading up to the offense, but appear to have made up before the offense conduct. (*See id.*) Summerson contends that these messages "support a theory that the alleged victim was not coerced in the way the Government has claimed and…that the extortion narrative towards her mother was entwined with the victim's own communications and motives." (ECF No. 188 at 3.) The Government argues that the evidence is not exculpatory, but is at best impeachment material, which does not require disclosure before entry of a guilty plea. (*See* ECF No. 181 at 6–9.) The Government contends that this material cannot form a basis for relief because the fact that the victim had an argument with her boyfriend before the offense conduct was already known to Summerson. (*See id.*)

The Government argues persuasively that the discovery material provided to Summerson post guilty plea was not exculpatory. However, even if the Court assumes that the post-plea discovery production contained material or exculpatory information, Summerson's motion would still be denied because his guilty plea would not run afoul of *Brady*'s mandate to ensure a fundamentally fair proceeding. *See Moldowan*, 578 F.3d at 378; *White*, 2025 U.S. App. LEXIS 19487 at *4. The fact that the victim and her boyfriend were having difficulties during the time leading up to the kidnapping and extortion had been known to Summerson for many months before he decided to change his plea. Summerson already possessed a recording of a September 2024

9

interview of the victim's boyfriend that referenced the text message arguments. The existence of messages memorializing their argument was known to Summerson before he changed his plea to guilty. The only thing that Summerson learned from the post-plea extraction report was the exact language used by S.F. and M.W. during their arguments, and their subsequent make-up, all of which occurred before the offense conduct.

Summerson cites *Ferrara v. United States*, 456 F.3d 278, 296 (1st Cir. 2006), a habeas case analyzing a *Brady* violation, to support his argument. (*See* ECF No. 188 at 8.) In *Ferrara*, the First Circuit held that a defendant's guilty plea was infirm because evidence withheld by the prosecutor "would have substantially detracted from the factual basis that underpinned" the defendant's plea. *Id.* at 296–98. The Court notes that *Ferrara* also involved other acts of prosecutorial misconduct not alleged in the instant case. But even on the grounds for which Summerson cites *Ferrara*, it is unavailing. The text messages produced from the victim's phone after the change of plea hearing do not in any way undermine the factual basis that Summerson admitted to.

Here, it is clear that Summerson made a tactical decision to enter a guilty plea—a plea supported by a strong factual basis. *See Dixon*, 479 F.3d at 436. He did so even though the kidnapping cross-reference was contemplated in the terms of the plea agreement. Only after viewing the guideline calculations in the draft Pre-Sentence Report, and determining that the Government and Probation Office would in fact seek to apply the cross-reference, did Summerson attempt undo his knowing and voluntary plea by way of his motion to withdraw. The Record clearly shows that Summerson's guilty plea was not hastily entered nor made with unsure heart or confused mind. *See id*. This factor weighs against Summerson.

### 5. Defendant's Nature and Background

At the time of the proceedings, Summerson was 30 years old. (ECF No. 180 ¶¶ 93–97.) He had obtained an associate's degree in human services and completed some work toward a bachelor's degree in intelligence and national security studies. (*Id.*) Summerson was a member of the United States Army National Guard from 2014–2020, received training in combat engineering and heavy-duty diesel mechanics, and was recognized for "learning at a fast pace." (*Id.* ¶ 98.) Based on this history, the Government argues that this factor weighs against withdrawal.

Summerson argues that, although nothing about his nature and background suggests he could not understand his plea, this factor is neutral because his background "does suggest that he would not understand that once he entered a plea, there would be later produced discovery that would render his plea involuntary, unknowing or unintelligent." (ECF No. 188 at 9.)

Summerson's framing of this factor fails to accurately address the ultimate question. His argument speaks more to the underlying circumstance factor, which is analyzed and addressed above. Based on the PSR, Summerson's *pro se* filings and the Court's interactions with Summerson during his in-court appearances, he appears to be highly intelligent and resourceful. He has achieved success in higher education, military service, and entrepreneurial ventures. Thus, the Court concludes that Summerson's nature and background support a finding that he knowingly and intellectually understood his guilty plea, its impact, and consequences resulting from it. This factor weighs against withdrawal.

### 6. Prior Criminal Justice System Experience

Although Summerson's criminal history is not extensive, still this is not his first encounter with the criminal justice system. He has a criminal history score of four, placing him in criminal history category III. (ECF No. 180 at 18–22.) Three of Summerson's criminal history points

resulted from his most serious prior convictions when he decided to take a Maryland state court case involving assault, robbery, theft, and rape charges to trial. (*Id.* at 18–19.) His decision to go to trial resulted in convictions on the assault, robbery, and theft charges, and not guilty verdicts on the rape charges. (*Id.*) Summerson also has pending charges in Missouri and South Carolina, some of which involve abusing women, circumstances similar to those in this case. (*See id.* at 20–22.) The Government argues this prior history weighs against withdrawal.

Summerson again argues that this factor is neutral because Summerson "has not been exposed to situations within the criminal justice system in which he has pled guilty to a charge yet new, exculpatory discovery information later surfaced to undermine the validity of his guilty plea." (ECF No. 188 at 9–10.)

Although Summerson has not previously been in these exact legal circumstances, this inquiry is not so narrow in scope. Given his experience in Maryland, Summerson was clearly aware of his rights to go to trial—and the consequences and opportunities associated with not pleading guilty—because he previously exercised those rights in his Maryland state court case. However, even with such prior experience, the Court finds this factor is neutral, primarily because Summerson's legal problem in Maryland and South Carolina occurred close in time to the facts in the instant case, and not as a result of older prior arrests and convictions. In fact, prior to his Maryland convictions, Summerson had only one misdemeanor conviction—a fine for Assault in 2017. As noted, the Court finds this factor is neutral.

7. **Potential Prejudice to the Government**

Because of the above analysis, and the Court's finding that Summerson has not established a fair and just reason for allowing withdrawal of his plea, the Government need not establish prejudice. *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006).

## IV. CONCLUSION

As the Court concluded at the end of the motion hearing, with the exception of "Prior Criminal Justice System Experience", which the Court found was neutral, all other plea withdrawal factors weigh against granting Summerson's motion. Summerson has not shown a fair and just reason for allowing withdrawal of his plea. Thus, his Motion to Withdraw Guilty Plea (ECF No. 178) is **DENIED**.

**IT IS SO ORDERED** this 9th day of December, 2025.

/s/ ***John T. Fowlkes, Jr.***
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE